**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**TRAYESHA BOOTH**                                                                                        **PLAINTIFF**

**VS.**                                        **NO. 4:25-cv-00060-DPM**

**NITV, LLC; NITV FEDERAL SERVICES, LLC;**
**CHARLES HUMBLE; AND JOHN DOES 1-2**                                          **DEFENDANTS**

**BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants NITV, LLC, NITV Federal Services, LLC, and Charles Humble ("collectively, Defendants" or "NITV"), by and through their attorneys Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., for their Brief in Support of Motion for Judgment on the Pleadings, state as follows:

**I.     INTRODUCTION**

At its core, this is an employment case disguised as a products liability action. In her Complaint, Plaintiff Trayesha Booth ("Plaintiff"), a former employee of the Arkansas Department of Corrections ("ADC"), alleges that, as part of an internal ADC investigation, she was given a voice stress analyzer test, which concluded she was deceptive, and as a result, she was terminated from her position. Presumably because her former employer is immune from suit, Plaintiff instead asserts claims against the supplier of the voice stress analyzer test, NITV Federal Services, LLC, and several related parties, alleging a host of claims ranging from defamation to products liability-based claims, all of which arise from her termination. But by virtue of its contract with the ADC, NITV acquired immunity, and as a result, all Plaintiff's claims are subject to dismissal under Arkansas's acquired-immunity doctrine.

However, even if NITV was not immune based on its contract with the ADC (it is), Plaintiff's claims all still fail for lack of essential elements, as a matter of Arkansas law. As such, dismissal is appropriate on multiple fronts.

## II.    FACTUAL BACKGROUND

NITV Federal Services, LLC manufactures, markets, and supplies computerized voice stress analysis ("CVSA") devices to government agencies, like the ADC. Doc. 2, ¶ 10, Doc., 6, ¶ 11. Plaintiff is a former employee of the ADC, who held the position of Correctional Officer II until her termination on February 14, 2024. Doc. 2, ¶¶ 4-5.

In her Complaint, Plaintiff alleges that she was accused by an inmate of bringing contraband into an ADC prison. *Id.* at ¶ 6. Plaintiff claims that based on that accusation, she was given a voice stress analysis test by the ADC on two occasions, and that she was "told she was deceptive" in the second test. *Id.* at 7. Plaintiff contends that the results of the second voice stress analysis test were inaccurate, that she "was not lying or being deceptive," and that she "answered all questions honestly." *Id.* at 8. Plaintiff claims that her employment with the ADC was terminated based on the results of the voice stress analysis test, and that as a result, her "reputation was harmed." Doc. 2, ¶¶ 4, 16.

All Plaintiff's claims arise from her termination by the ADC. Yet, instead of asserting claims against her former employer, she seeks to hold NITV liable for her termination based on NITV's sale of the CVSA device to the ADC used to test Plaintiff. *Id.* at ¶ 9. In short, Plaintiff alleges that the CVSA devices sold by NITV cannot accurately detect deception. *See* Doc. 2, ¶¶ 12-14. Specifically, Plaintiff contends that although NITV "claims that the [C]VSA devices it sells can detect falsehoods and lies in advertisements and marketing materials," those claims are "false" and are "known to be false by the NITV," citing to unnamed "studies." *Id.* at ¶¶ 11-12.

Based on her termination from the ADC, Plaintiff asserts the following causes of action against NITV: (1) a products liability claim based on an alleged design defect; (2) defamation; (3) false light; (4) a negligence-based products liability claim; and (5) violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"). *See* Doc. 2, ¶¶ 17-35. She seeks damages for lost wages, harm to her reputation, lost benefits, medical bills, and "mental, emotional, and physical suffering." *Id*. at ¶¶ 19, 23, 30, 34. Plaintiff also asserts a claim for punitive damages. *Id.* at 20, 24, 31, 35.

### III.    STANDARD OF REVIEW

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. Rule 12(c). In ruling upon a motion for judgment on the pleadings, the court "must accept as true all factual allegations set out in the complaint, and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Id.*

A motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Ashley Cnty. v. Pfizer*, 552 F.3d 659, 665 (8th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true

3

(even if doubtful in fact)." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotations omitted).

"In ruling on a motion for judgment on the pleadings, the court may consider the pleadings and exhibits attached thereto." *Chancellor v. State Farm Mut. Auto. Ins. Co.,* No. 08-6065, 2008 WL 4368670, at *2 (W.D. Ark. Sept. 22, 2008) (considering exhibit attached to defendant's answer on defendant's Rule 12(c) motion); *see also Miller v. Redwood Toxicology Lab., Inc.,* 688 F.3d 928, 931 n.3 (8th Cir. 2012); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (citing *Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n. 4 (8th Cir. 2003)); *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citation omitted) ("In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'"); *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802 (8th Cir. 2002) ("[C]ourts may rely on matters within the public record.").

Substantive Arkansas law governs Plaintiff's state law claims in this diversity action. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (citing *Ashley Cnty.*, 552 F.3d at 665); *Archer v. Pavement Specialist, Inc.*, 278 F.3d 845, 846 (8th Cir. 2002) (citing *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252 (8th Cir.1996)).

## IV. ARGUMENT

**1. Plaintiff's Complaint should be dismissed pursuant to the acquired-immunity doctrine.**

All of Plaintiff's claims are governed by Arkansas law, *see Scott v. Martin*, No. 4:14CV00246-JLH, 2015 WL 12672124, at *2 (E.D. Ark. Jan. 21, 2015), including the acquired-immunity doctrine. Despite the fact that Plaintiff's claims all arise from the termination of her

4

employment *by the ADC*, she has only named NITV-related parties as Defendants in this case. The reason for that decision is clear—Plaintiff cannot assert claims against the ADC because it is immune from suit. *Morrison v. Arkansas Dep't of Correction*, No. 2:08CV0050 BSM, 2009 WL 1850304, at *3 (E.D. Ark. June 26, 2009) (granting summary judgment on state law claims because the ADC was immune from suit); *Lincoln v. Arkansas*, No. 4:07-CV-424, 2009 WL 943548, at *7 (E.D. Ark. Apr. 6, 2009) (noting that the state's "immunity extends to the ADC"). But Plaintiff's claims against NITV fail for a similar reason. Under Arkansas law, NITV acquired the ADC's sovereign immunity rendering all Plaintiff's claims subject to dismissal.

Under the Arkansas acquired-immunity doctrine, a contractor who performs work in accordance with the terms of a contract with a governmental agency and under the supervision of the governmental agency is not liable for damage resulting from that performance. *See Smith v. Rogers Group, Inc.*, 348 Ark. 241, 250, 72 S.W.3d 450, 455 (2002). Pursuant to this doctrine, a contractor for a public agency, "shares the sovereign immunity of the public body from liability for incidental damages necessarily involved in the performance of the contract." *Id.*

"The clear purpose of this immunity is to protect the contractor who performs the work as specified from bearing the brunt of liability based on the actions or decisions made solely by the governmental agency." *Id.* at 250-51, 456; *see also Price v. Thomas Built Buses, Inc.,* 370 Ark. 405, 260 S.W.3d 300 (2007); *Barker v. Rogers Grp., Inc.*, 74 Ark. App. 18, 25, 45 S.W.3d 389, 394 (2001); *Guerin Contractors, Inc. v. Reaves*, 270 Ark. 710, 713, 606 S.W.2d 143, 144; *Se. Constr. Co. v. Ellis*, 233 Ark. 72, 342 S.W.2d 485 (1961).

Plaintiff's claims are all premised on the ADC's use of an NITV CVSA device as part of an internal investigation of an employee who allegedly brough contraband into an ADC prison. Doc. 2, ¶¶ 4-9. With its Answer to Plaintiff's Complaint, NITV attached two copies of its "End-

5

User License Agreement for CVSA Software" between NITV and the ADC. *See* Doc. 6-1, 6-2. These agreements confirm that NITV is a contractor of the ADC, and it was providing a product and related services pursuant to the terms of a contract with the ADC. As a result, NITV is immune under the acquired-immunity doctrine, and all Plaintiff's claims are subject to dismissal. *Cf. Rutledge v. Remmel*, 2022 Ark. 86, at 7, 643 S.W.3d 5, 9 (quoting Ark. Code Ann. § 19-10-305(a)) ("State officers and employees receive immunity from liability and suit 'for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.'").

**2.    Plaintiff's claims should be dismissed for lack of causation.**

Even assuming *arguendo* NITV is not immune under the acquired-immunity doctrine, all of Plaintiff's claims fail for lack of causation. *See generally Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928 (8th Cir. 2012) (affirming dismissal of similar claims against drug-and-alcohol testing company that contracted with the state of Minnesota). It is well settled that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations omitted); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010) (same).

Under Arkansas law, all causes of action require sufficient allegations and proof of causation. *See Hill v. Maxwell*, 247 Ark. 811, 448 S.W.2d 9 (1969); *Gregory v. Walker*, 239 Ark. 415, 389 S.W.2d 892 (1965); *Superior Forwarding Co. v. Garner*, 236 Ark. 340, 366 S.W.2d 290 (1963); *Sumlin v. Woodson*, 211 Ark. 214, 199 S.W.2d 936 (1947); *see also Black v. Rowen*, 2013 Ark. App. 349, at 6. It is well settled that "[d]amages must arise from the wrongful acts of the breaching party." *Spann v. Lovett & Co.*, 2012 Ark. App. 107, at 16, 389 S.W.3d 77, 91; *see also Grote v. Arvest Bank*, No. 5:17-CV-5069, 2017 WL 4320340, at *3 (W.D. Ark. Sept. 28, 2017)

6

(granting motion to dismiss because the complaint "includes no facts that explain how [the defendant's] alleged breach of her duties proximately caused [the plaintiff] to incur liability").

Despite this black letter law, the allegations in Plaintiff's Complaint confirm that any alleged damages to Plaintiff were not caused by NITV, which is not alleged to have any involvement in the testing or termination of Plaintiff's employment by ADC. Indeed, Plaintiff's Complaint confirms that the ADC, not NITV, was responsible for any decision to terminate Plaintiff's employment. Doc. 2, ¶ 4. The Complaint "does not and cannot allege a causal connection between [NITV's] actions and any presumed injury suffered by [Plaintiff]." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 936 (8th Cir. 2012) (finding a lack of Article III standing). Here, as in *Miller*, "too many factors stand in the way of a direct causal relationship." *Id.*

Notably, ADC's internal policies and procedures (which, as an agency of the state, are public records) confirm that NITV could not possibly have caused Plaintiff's termination or alleged damages. ADC Secretarial Directive No. 2021-15 outlines the ADC's policies and procedures for internal investigations and specifically authorizes the use of "Computerized Voice Stress Analysis (CVSA)" tests. Ex. 1, ADC SD No. 2021-15 (Eff. Aug. 24, 2021).[1] Critically, Secretarial Directive No. 2021-15 also includes mandatory "procedural safeguards" when a CVSA is utilized, including the following:

   c.   Thorough preliminary investigation of the incident reveals that there are believable allegations that policies or conduct guidelines of the Department or Division, or the law have been violated….

   j.   The requesting authority **will not sustain a complaint against an employee solely based on CVSA or polygraph test results. There must be at least one additional item of corroborating evidence** in the written report completed

---

[1] A copy of ADC Secretarial Directive No. 2021-15 is attached as Exhibit 1 for the Court's convenience. ADC Secretarial Directive No. 2021-15 is also publicly available online at https://doc.arkansas.gov/wp-content/uploads/2021/12/SD-2021-15-Internal-Investigations-and-Criminal-Evidence-Handling.pdf

> by the investigating officer for the requesting authority to sustain the complaint. (A witness statement is one form of corroboration).

Ex. 1, at 4, § 6 (emphasis added). Thus, based on the ADC's policies, Plaintiff could not have been terminated based on the results of the CVSA test alone, and instead, additional corroborating evidence was required.

Likewise, the End-User License Agreement for CVSA Software between NITV Federal Services, LLC and the ADC includes a similar "caveat" to the ADC's policies related to reliance on CVSA devices. Specifically, the End-User License Agreement for CVSA Software provides as follows:

> **CAVEAT:** NFS sells the Computer Voice Stress Analyzer as an *investigative tool*. The results of any testing should not be used as a final determinant…

Docs. 6-1, at 2, 6-2, at 2.

In short, NITV was not Plaintiff's employer, and as a result, it did not (and based on the ADC's policies and the contract with NITV, could not) cause Plaintiff's employment to be terminated. Thus, all Plaintiff's claims fail for lack of causation.

3. **Plaintiff's product liability-based claims fails as a matter of law because Plaintiff has failed to allege that she sustained bodily injury or property damage due to NITV's actions, and Plaintiff has not alleged that NITV's product is "unreasonably dangerous."**

In her Complaint, Plaintiff asserts two products-liability based claims: one claim based on an alleged "design defect" with the CVSA device sold to the ADC, and a separate claim alleging NITV was "negligent in creating" CVSA devices. Doc. 2, ¶¶ 17-20, 28-31. Plaintiff's products liability claims fail on multiple fronts. First, Plaintiff has failed to sufficiently allege that the CVSA device at issue caused bodily injury, death, or property damage, as required by Arkansas law. Second, Plaintiff has also failed to allege that the CVSA device sold by NITV was supplied in a defective condition that rendered it unreasonably dangerous.

8

      a.     *Plaintiff has failed to allege personal injury, death, or property damage.*

Arkansas law "treat[s] all product liability actions consistently, regardless of the theory of recovery." *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1093 (8th Cir. 2013). In order to state a claim under the Arkansas Product Liability Act, Ark. Code Ann. §§ 16-116-201, *et seq.*, a plaintiff must allege "personal injury, death, or property damage caused by" a product. *See* Ark. Code Ann. § 16-116-202(5) (defining "[p]roduct liability action" as an action "brought for or on account of personal injury, death, or property damage caused by" a product). Plaintiff has failed to do so here. Instead, Plaintiff's claimed damages all arise from the termination of her employment and the subsequent alleged "harm to her reputation." Doc. 2, ¶¶ 16, 19, 30. Reputational harm does not constitute "personal injury, death, or property damage" as required to assert a products liability claim. Thus, Plaintiff's products liability-based claims are both subject to dismissal.

Plaintiff's conclusory allegation of "physical suffering" and that she "incurred medical bills" does not salvage her products liability claims. *Id.* at ¶¶ 19, 30. Terminating Plaintiff's employment did not physically injure Plaintiff, and Plaintiff's vague reference to unspecified "medical bills" without additional facts, cannot transform Plaintiff's claim into an action for personal injuries.

      b.     *Plaintiff has failed to allege that the CVSA device at issue was unreasonably dangerous.*

In order to assert a strict products liability claim, Plaintiff must allege that the "product was supplied by him or her in a defective condition that rendered it unreasonably dangerous." Ark. Code Ann. § 16-116-101(a)(2). Merely alleging "[a] defective condition alone is not enough. The defective condition must render the product 'unreasonably dangerous.'" *Mason v. Mitcham*, 2011 Ark. App. 189, at 4, 382 S.W.3d 717.

A survey of Arkansas caselaw confirms that the CVSA device at issue in this case is not an "unreasonably dangerous" product. *See Farm Bureau Ins. Co. v. Case Corp.*, 317 Ark. 467, 878 S.W.2d 741 (1994) (tractor catching fire); *Blagg v. Fred Hunt Co.,* 272 Ark. 185, 612 S.W.2d 321 (1981) (flooring that contained formaldehyde); *Ford Motor Co. v. Massey*, 313 Ark. 345, 855 S.W.2d 897 (1993) (sudden acceleration of a vehicle without warning); *Buchanna v. Diehl Mach*., 98 F.3d 366 (8th Cir. 1996) (handsaw with defective lighting). In fact, the opposite is true. *See Apex Oil Co., Inc. v. Jones Stephens Corp.*, 881 F.3d 658, 661 (8th Cir. 2018) (holding toilet supply line was not unreasonably dangerous under Arkansas law).

Moreover, the use of CVSA equipment is authorized and regulated by the Arkansas General Assembly, Ark. Code Ann. §§ 17-39-301, *et seq*., and administrative rules promulgated by the Division of Arkansas State Police. *See* Code Ark. R. 015.01.1-1.0, *et seq*. ("Rules for Licensing and Regulation of Private Investigators, Private Security Agencies, Alarm Systems Companies, Polygraph Examiners, and Voice Stress Analysis Examiners"). More specifically, the Arkansas Board of Corrections expressly authorizes the ADC to use CVSA equipment in connection with internal affairs and investigations. *See* Code Ark. R. 004.03.1-014 (IV)(B) ("The Internal Affairs Division, or its successor, shall utilize various investigative procedures and tools to conduct and assist in those investigations. Those tools may include, but are not limited to polygraph examinations, and computerized voice stress analysis.").

The use of a CVSA device during the course of an ADC investigation is not an unreasonably dangerous condition. It is nothing more than a "foreseeable consequence" of using the product, and a product that is "merely inadequate" is insufficient to deem a product unreasonably dangerous under Arkansas law. *See Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983).  In her Complaint, Plaintiff does not allege that the CVSA

10

device sold by NITV is "unreasonably dangerous." Any attempt to do so would strain reason and contravene public policy, in light of the direct statutory and regulatory authorization of the use of CVSA devices. *See Durham v. Dassault Falcon Jet Corp.*, No. 6:23-CV-06050, 2024 WL 1832997, at *6 (W.D. Ark. Feb. 6, 2024) (quoting *Sterling Drug, Inc. v. Oxford*, 743 S.W.2d 380, 385 (Ark. 1988) ("Arkansas's public policy can be gleaned from 'its constitution and statutes.'")). As such, Plaintiff's products liability claims are subject to dismissal.

4.      **Plaintiff's defamation claim fails for lack of essential elements.**

Under Arkansas law, a claim for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 955-56, 69 S.W.3d 393, 402 (2002) (compiling cases). Six elements are required to sustain a claim of defamation, whether it be by spoken words (slander) or written words (libel): (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. *Id.*

Here, Plaintiff's defamation claim is premised on the results of a CVSA test administered to her in the court of an ADC investigation. Doc. 2, ¶¶ 4-8. The section of Plaintiff's Complaint devoted to her defamation claim is only four paragraphs, and the only claim-specific allegations within those four paragraphs are that "Defendants have made false statements about Plaintiff or caused them to be made about her, constituting defamation - both slander and libel." *Id.* at ¶¶ 21-24. Plaintiff's Complaint is devoid of any allegations that could plausibly support any of these essential elements.

A complaint must specify the alleged defamatory statements and identify the persons to whom they were published, or a defendant cannot adequately respond to the allegations. *See*

*Freeman v. Bechtel Constr. Co.*, 87 F.3d 1029, 1031 (8th Cir. 1996); *Holliday v. Great Atlantic & Pacific Tea Co.*, 256 F.2d 297, 302 (8th Cir. 1958). Plaintiff's Complaint consists of only conclusory statements, which are insufficient under Eighth Circuit precedent.

Second, Plaintiff's Complaint falls well short of providing sufficient facts that NITV made any defamatory "statement of fact" related to Plaintiff. The CVSA tests were performed by ADC's electronic equipment pursuant to state law and ADC administrative directives, and the only "statements" consist of the results of the tests. Doc. 2, ¶¶ 7-8. There are no statements made by NITV—instead, Plaintiff's claims are premised on data generated from a computer operated by the ADC. *Id.*

Furthermore, in accordance with ADC Secretarial Directive No. 2021-15, the examination is conducted and the results are reviewed by a licensed computerized voice stress analysis examiner. *See* Ex. 1, § II(6). And if an ADC "employee objects to the results of the test, that employee may make a written request to the Secretary to have a second reading of the original computerized voice stress analysis charts made by another independent examiner." *Id.* at § II(5).

Because the results of a CVSA test, which are not a statement of fact by NITV, must be interpreted by a licensed examiner, the test results, by their very nature, cannot be defamatory. "[A] subjective interpretation of multiple objective data points leading to a subjective conclusion" is not "sufficiently factual to be susceptible of being proved true or false." *Aviation Charter, Inc. v. Aviation Research Grp./US*, 416 F.3d 864, 871 (8th Cir. 2005). A defamation claim based on raw data cannot proceed where "other interpretations [of the data] exist. Consequently, remarks on a subject lending itself to multiple interpretations cannot be the basis of a successful defamation action because as a matter of law no threshold showing of 'falsity' is possible in such circumstances." *McClure v. Am. Family Mut. Ins. Co.*, 223 F.3d 845, 853 (8th Cir. 2000). While

Plaintiff may disagree with the eventual interpretation of the test results by the examiner, the test results themselves are not defamatory under Arkansas law.

Plaintiff's defamation claim separately fails under Arkansas law because the "statement of fact," to the extent it exists, is subject to a qualified privilege. "An allegedly defamatory communication may be held to fall under a qualified privilege when the statement is made in good faith and in reference to a subject matter in which the communicator has an interest or duty and to a person having a corresponding interest or duty. *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 735, 74 S.W .3d 634, 653 (2002); *see also King v. Arkansas Children's Hosp.*, No. 4:05-CV-1356, 2006 WL 2786971, at *9 (E.D. Ark. Sept. 27, 2006). Plaintiff concedes in her Complaint that the statement allegedly made by NITV was limited to the use of CSVA system by the ADC, pursuant to its contract with NITV. These allegations fall squarely within the qualified privilege recognized under Arkansas law.

Finally, Plaintiff has failed to allege any fault on the part of NITV. As previously noted, the use of CVSA equipment is authorized and regulated by the Arkansas General Assembly, Ark. Code Ann. §§ 17-39-301, *et seq*., and administrative rules promulgated by the Division of Arkansas State Police. *See* Code Ark. R. 015.01.1-1.0 , *et seq.* Because the use of the CVSA device in Plaintiff's Complaint was authorized by Arkansas law, the mere fact that the ADC utilized the test for its authorized purpose cannot amount to fault on the part of NITV necessary to support Plaintiff's defamation claim. In sum, Plaintiff's claim for defamation should be dismissed on multiple fronts.

**5.      Plaintiff has failed to state a claim for false light.**

To assert a claim for false light, Plaintiff must show that (1) the false light in which she was placed by the publicity would be highly offensive to a reasonable person, and (2) NITV had

knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed. *Dodrill v. Ark. Democrat Co.*, 265 Ark. 628, 638, 590 S.W.2d 840, 845 (1979). The evidence must support the conclusion that the publisher had serious doubts about the truth of its publication. *Duggar v. City of Springdale*, 2020 Ark. App. 220, at 16, 599 S.W.3d 672, 685.

In her Complaint, Plaintiff merely alleges the elements of a false light claim without any additional factual support other than claiming that a "reasonable person would have had serious doubts about the truth of the publication, given the devices' inherent unreliability." Doc. 2, ¶ 27. A complaint "must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Meeker v. Burns*, No. 4:08-CV-004219, 2009 WL 2568701, at *3 (E.D. Ark. Aug. 18, 2009) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965) (cleaned up). Doubts, however serious, do not suffice, and the Court is "free to 'ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.'" *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 961 (8th Cir. 2009) (quoting *Wiles v. Capitol Indem. Corp.,* 280 F.3d 868, 870 (8th Cir. 2002)).

Plaintiff has not alleged that NITV had any role in the examination of Plaintiff, the results of the test, the interpretation of the results, or the termination of Plaintiff's employment by ADC. Without involvement in the examination and interpretation that allegedly led to Plaintiff's termination, which the Complaint makes clear was undertaken by nonparties, NITV cannot be liable under a false light theory for supplying a product the ADC was authorized to use under Arkansas law.

**6.      Plaintiff's negligence claim is subject to dismissal.**

"Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that *the breach was the proximate cause of the plaintiff's injuries.*" *Branscumb v. Freeman*, 360 Ark. 171, 179, 200 S.W.3d 411, 416 (2004) (emphasis in original). In her Complaint, Plaintiff alleges that NITV was "negligent in creating, designed [sic], advertising, marketing, and training" on the CVSA devices at issue. Doc. 2, ¶ 29.

Again, as explained above, accepting the allegations in Plaintiff's Complaint as true confirms that NITV did not cause Plaintiff's alleged damages. The ADC, not NITV, was responsible for any decision to terminate Plaintiff's employment, the event from which Plaintiff's alleged damages arise. Doc. 2, ¶ 4. And as explained in the ADC's Secretarial Directive in place at the time of Plaintiff's termination, her termination could not have been "solely based on CVSA or polygraph test results," and instead "at least one additional item of corroborating evidence" was required to terminate Plaintiff's employment. Ex. 1, at 4, § 6.

Separately, Plaintiff's Complaint does not contain facts that show any legal duty that is owed by any defendant to Plaintiff. "Determining whether a defendant owed a duty to the plaintiff is a question of law for the court." *I Square Mgmt., LLC v. McGriff Ins. Servs., Inc.*, 52 F.4th 1028, 1031 (8th Cir. 2022). Plaintiff's conclusory statement that NITV "ha[s] been negligent in creating, designed [sic], advertising, marketing, and training on these devices" does not suffice, particularly where Plaintiff's alleged damages relate to the use and interpretation of the CSVA results. *Miller* is instructive:

> [G]iven the State's autonomy discussed above regarding how it uses the test results provided to it by Redwood, we predict that the Minnesota courts would hold that Redwood did not owe Miller a specific duty to warn nor did it owe Miller a general

> duty of reasonable care, at least not one beyond that of properly handling the tests and accurately detecting and reporting the presence of the metabolites.

*Miller*, 688 F.3d at 937 (affirming dismissal of negligence claim). The Minnesota law applied by the Eighth Circuit in *Miller* comports with Arkansas law. *See Ethyl Corp. v. Johnson*, 345 Ark. 476, 481–82, 49 S.W.3d 644, 648 (2001) (compiling cases) ("Arkansas law has long since recognized that there is no duty to guard against merely possible, as opposed to likely or probable, harm.").

Like the plaintiff in *Miller*, Plaintiff attempts to assert a negligence claim against NITV based upon an employment decision made by a third party using test results with which Plaintiff disagrees:

> According to Miller's complaint, on June 15, 2010, Miller provided a urine sample for testing at Redwood's laboratory at the direction of his probation officer. The test results indicated that Miller's EtG/EtS levels were above a specified cut-off level, which cut-off had been established by the State of Minnesota just as do all agencies that contract with Redwood. Based on these test results, Miller's probation officer filed a violation against him and took Miller into custody. Miller insisted, then and now, that he did not drink alcohol but that his test results were positive because of incidental exposure to alcohol.

*Miller*, 688 F.3d at 932.

Unlike the testing company in *Miller*, NITV had no involvement in the CVSA of Plaintiff or her employment generally. Plaintiff's allegations do not and cannot give rise to a viable negligence claim under Arkansas law. As a result, Plaintiff cannot sustain her negligence claim.[2]

---

[2] Plaintiff's passing mention of allegedly negligent "training" does not salvage her claim. Doc. 2, ¶ 29. "[A] claim for negligent training in Arkansas overlaps with a claim for negligent supervision." *Powell v. WestRock CP, LLC,* No. 2:23-CV-02085, 2024 WL 3073717, at *8 (W.D. Ark. June 20, 2024). "Under a negligent supervision theory, '*employers are subject to direct liability for the negligent supervision of employees* when third parties are injured as a result of the tortious acts of employees.'" *Montize v. Pittman Props. Ltd. P'ship No. 1*, 719 F. Supp. 2d 1052, 1057 (W.D. Ark. 2010) (quoting *Madden v. Aldrich*, 346 Ark. 405, 415, 58 S.W.3d 342, 350 (2001)) (emphasis added). Plaintiff does not allege that NITV employed any of the ADC staff members or any other individual involved in Plaintiff's termination. As a result, Plaintiff has failed to sufficiently allege a claim for negligent training.

**7.      Plaintiff's claim for violations of the ADTPA fails as a matter of law.**

   *a.      Plaintiff's ADTPA claim should be dismissed because this case does not involve a "consumer-oriented" act or practice.*

The ADTPA "exists to protect consumers of goods and services" in Arkansas. *IlluminationStation, Inc. v. Cook*, No. CIV. 07-3007, 2007 WL 4166215, at *2 (W.D. Ark. Nov. 20, 2007). It provides a private right of action to "any person" who suffers actual damage or injury as a result of a violation of the statute. Ark. Code Ann. § 4–88–113(f). The required elements for an ADTPA claim are "(1) a deceptive **consumer-oriented act or practice** which is misleading in a material respect, and (2) injury resulting from such act." *Skalla v. Canepari*, 2013 Ark. 415, 14, 430 S.W.3d 72, 82 (emphasis added) (citing Ark. Code Ann. § 4–88–113(f)).

By its terms, the ADTPA does not apply to the allegations against NITV in this case as there is no "consumer-oriented" act alleged in Plaintiff's Complaint. Plaintiff is not a consumer of the CVSA device at issue, she was an employee of the ADC, and "NITV sold the [C]VSA" to the ADC. Doc. 2, ¶ 9. As explained in Plaintiff's Complaint, NITV "sells [C]VSA devices to government agencies and private companies," not members of the consuming public. *Id.* at ¶ 10. *See Oak Creek Inv. Properties, Inc. v. Am. Elec. Power Serv. Corp.*, No. 4:18-CV-4009, 2020 WL 759929, at *13 (W.D. Ark. Feb. 14, 2020) (dismissing an ADTPA claim for lack of a "consumer-oriented act" where plaintiff failed to allege an act related to "any members of the consuming public").

Because the ADTPA only protects consumers, courts routinely dismiss ADTPA claims where a plaintiff fails to allege a "consumer-oriented act or practice." *See e.g., Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015) (affirming dismissal of an ADTPA claim that did not involve a "consumer-oriented" act or practice); *Sims v. State Farm Mut.*

*Auto. Ins. Co.*, No. 4:13CV00371 JLH, 2015 WL 11090627, at *6 (E.D. Ark. June 9, 2015), aff'd, 894 F.3d 941 (8th Cir. 2018); *Forever Green Athletic Fields, Inc. v. Lasiter Const., Inc.*, 2011 Ark. App. 347, 18, 384 S.W.3d 540, 552 (affirming dismissal of an ADTPA claim where a party failed to assert "any type of consumer-oriented act or practice"). The same result is warranted here.

      b.     *Plaintiff's ADTPA claim is barred by the safe-harbor provision of the ADTPA.*

Other portions of the ADTPA are also fatal to Plaintiff's ADTPA claim. The ADTPA contains a safe-harbor provision for "[a]ctions or transactions specifically permitted under laws administered by ... [any] regulatory body or officer acting under statutory authority of this state." Ark. Code Ann. § 4-88-101(3). The ADTPA precludes claims when the actions or transactions fall within the safe-harbor provision. *Air Evac EMS, Inc. v. Usable Mut. Ins. Co.*, 2017 Ark. 368, at 6, 533 S.W.3d 572, 575-76.

As previously discussed, the CVSA device at issue in this case is authorized and regulated by the Arkansas General Assembly, Ark. Code Ann. §§ 17-39-301, *et seq.*, and administrative rules promulgated by the Division of Arkansas State Police. *See* Code Ark. R. 015.01.1-1.0 *et seq*. ("Rules for Licensing and Regulation of Private Investigators, Private Security Agencies, Alarm Systems Companies, Polygraph Examiners, and Voice Stress Analysis Examiners"). The Arkansas State Police regulations are promulgated pursuant to state statute, and the Arkansas Board of Corrections expressly authorizes the ADC to use CVSA equipment in connection with internal affairs and investigations. *See* Code Ark. R. 004.03.1-014 (IV)(B) ("The Internal Affairs Division, or its successor, shall utilize various investigative procedures and tools to conduct and assist in those investigations. Those tools may include, but are not limited to polygraph examinations, and computerized voice stress analysis.").

In her Complaint, Plaintiff alleges that the ADC used a CVSA device in connection with an internal investigation of contraband brought into the prison. Doc. 2, ¶¶ 4-8. This lawfully authorized conduct falls squarely into the safe-harbor provision of the ADTPA, which bars Plaintiff's claim as a matter of law. *See Air Evac EMS, Inc. v. Usable Mut. Ins. Co.*, 2017 Ark. 368, at 6, 533 S.W.3d 572, 575-76 (holding that the ADTPA's safe-harbor provision precludes claims when the "actions or transactions at issue have been specifically permitted or authorized under laws administered by a state or federal regulatory body or officer"). Plaintiff's ADTPA claim can also be dismissed on this basis.

**8.    Separate Defendants Charles Humble and NITV, LLC are not proper parties to this action and should be dismissed outright.**

Arkansas courts have long recognized the nearly universal rule that corporations and limited liability companies are distinct legal entities, separate from their stockholders and members, respectively. *See K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners, Inc.*, 373 Ark. 14, 32, 280 S.W.3d 1, 15 (2008); *Quinn-Matchet Partners, Inc. v. Parker Corp., Inc.*, 85 Ark. App. 143, 148–49, 147 S.W.3d 703, 706–07 (2004); *First Commercial Bank, N.A. v. Walker*, 333 Ark. 100, 110, 969 S.W.2d 146, 151 (1998); *Wiseman v. State Bank and Trust, N.A.*, 313 Ark. 289, 294, 854 S.W.2d 725, 728 (1993).

Arkansas appellate courts have considered the question of whether a stakeholder or officer of a corporation can be held liable for alleged negligence and have routinely held that a stakeholder or officer cannot be held liable without evidence of direct personal involvement in the events surrounding an injury. *See, e.g., Bayird v. Floyd*, 2009 Ark. 455, at 6, 344 S.W.3d 80, 84 (providing that an individual employed by a corporation is only liable for negligence if the individual is "*personally involved in the events surrounding an injury*") (quoting *McGraw v. Weeks*, 326 Ark. 285, 294, 930 S.W.2d 365, 367 (1996)) (emphasis added).

In her Complaint, in addition to NITV Federal Services, LLC, Plaintiff names NITV, LLC and Charles Humble as defendants, but Plaintiff provides only minimal factual support regarding the basis for their inclusion as parties. Specifically, Plaintiff alleges only that Charles Humble "is the inventor of the [C]VSA; and is one (I) of the directors of NITV, LLC, and NITV Federal Services, LLC," and from there, collectively refers to all the Defendants in the case as "NITV." Doc 2, ¶ 2. There are no allegations in the Complaint regarding any specific individual actions taken by NITV, LLC and Dr. Humble, and no allegations that either were personally involved in the events leading to Plaintiff' termination from the ADC that forms the basis of Plaintiff's claims. Without more facts regarding their involvement in the events leading to Plaintiff's termination, Plaintiff has failed to chin the bar to plead claims against NITV, LLC and Dr. Humble.[3]

## V.  CONCLUSION

The Court should grant this Motion. There are no allegations in the Complaint that satisfy the plausibility standard of Rule 8 or the substantive requirements of Arkansas law.

Respectfully submitted,

Adam D. Franks (Ark. Bar No. 2016124)
Colt D. Galloway (Ark. Bar No. 2016212)
**MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201-3525
Phone: 501-688-8800
Fax: 501-688-8807
afranks@mwlaw.com
cgalloway@mwlaw.com

---

[3] The only arguably proper defendant in this case is NITV Federal Services, LLC, which is a party to the End-User License Agreement for CVSA Software with the ADC. *See* Docs. 6-1, 6-2.