

**OFFICE OF THE SECRETARY**

1302 Pike Avenue, Suite C
North Little Rock, Arkansas 72114
Phone: (501) 682-3309 | Fax: (501) 534-3958
DOC.ARKANSAS.GOV

# SECRETARIAL DIRECTIVE

**SUBJECT:** Internal Investigations & Criminal Evidence Handling

**NUMBER:** 2021-15                                                          **SUPERSEDES:** SD 2021-02

**APPLICABILITY:** All Employees, Contract Employees, Volunteers and Offenders

**REFERENCE:**   AR 005 Reporting of Incidents, AR 014 Internal Affairs & Investigations
A.C.A. §§ 25-43-105, 25-43-108, 25-43-403, and A.C.A. 25-19-105

**PAGE:** 1 of 6

**ISSUED BY:** Original Signed by Secretary Solomon Graves     **EFFECTIVE DATE:** 8/24/2021

## I. POLICY:

As the executive head of the Department of Corrections (DOC), it is the responsibility of the Secretary of Corrections (Secretary) to ensure that all incidents within the DOC are investigated or reviewed in a timely, efficient, and procedurally correct manner. The decision to investigate or review an incident will be made by the Internal Affairs Administrator, based on the DOC policy, a Division's policy on the subject or as directed, a Division Director, or the Secretary of Corrections. Additionally, Computerized Voice Stress Analysis (CVSA) or Polygraph Examinations may be used under limited circumstances when a thorough investigation reveals their usefulness to an inquiry. Finally, evidence seized as a part of a criminal investigation or for the purpose of criminal prosecution will be handled in a uniform and consistent manner.

## II. PROCEDURE:

A. All incidents as defined in Administrative Rule 005, or a Department Policy, will be investigated, or reviewed by the Internal Affairs Division, which will report directly to the Secretary of Corrections. Suspicion of criminal acts (trafficking, staff sexual misconduct (*see* PREA SD), theft, etc.), serious violation of an offender's personal rights, or of rules, regulations, or procedures, all uses of force by staff against offenders, and complaints or information supplied which may have a serious bearing on DOC operations, should also be investigated.

B. As used in this Secretarial Directive, the term "offender" applies to inmates, residents in a community correction center or reentry center, parolees, and probationers.

1. All suspicions of criminal acts or institutional rule violations will be reported to the Warden/Center Supervisor, Area Manager, or Administrator; and the appropriate Deputy Director or Assistant Director and to the Internal Affairs Administrator who will advise the Secretary and appropriate Division Director. In cases where warranted, the Internal Affairs Administrator, after consulting with the Secretary and Division Director, will advise law enforcement, including appropriate federal authorities, the Arkansas State Police (ASP), or Sheriff where the incident occurred.

2. The Department shall impose no standard higher than a preponderance of the evidence in determining whether allegations of sexual abuse or sexual harassment are substantiated.

C. The guidelines below will provide the procedures and techniques used in conducting investigations. Attention to detail and thoroughness are required in any investigation. If these guidelines are followed, it will provide for a complete, thorough, and timely investigation.

**EXHIBIT 1**

D. Investigatory Procedures and Techniques

Evidence gathering, labeling and protection of evidence, questioning and taking statements from witnesses, use of photographs and videos, computerized voice stress analysis examinations, polygraph examinations, and report writing must be professionally accomplished to be useful in an effective investigation. Crime scenes must be secured to protect the integrity of any potential evidence.

1. Evidence Gathering: Evidence uncovered relating to a matter under investigation must be properly handled, protected, and labeled. After an incident occurs, the area should be sealed off to protect the integrity of the investigation and the evidence:

    a. Evidence which may reveal information through Crime Lab analysis (fingerprints, substance, etc.) should be handled with extreme care. In no case should a person's position or simple curiosity be a reason to unnecessarily handle evidence. Destroying latent fingerprints which might reveal ownership, responsibility, or involvement can seriously jeopardize the investigator's fact-gathering process.

    b. Evidence which may be turned over to the ASP or other law enforcement agency will be placed in a sealed and labeled container. Whether evidence is or is not turned over to the ASP or other law enforcement agency, does not change the necessity for its protection in a sealed plastic container/package or paper bag.

        i. Evidence that may be fingerprinted **shall not be** placed into a plastic bag or other air-tight container. This evidence shall be stored in a paper bag by careful handling and minimum touching.

        ii. Damp or biological evidence shall not be placed in plastic bags.

            a. Damp items shall air dry, unaided. Damp items shall not be dried in the sun or with artificial heat.

            b. After having been dried, the items shall be placed into paper bags.

            c. If it will be necessary for damp items to be placed in a paper bag, the investigator involved shall be notified immediately.

        iii. Paper folds will be suitable for small amounts of suspected narcotic substances, hair, fibers, etc. The paper fold shall then be placed into another container such as a plastic bag or paper bag.

        iv. The clothing of inmates and residents involved in suspected violent crimes shall be removed, bagged separately, and held in an evidence room or released directly to the Arkansas State Police.

        v. The evidence container will be sealed with some type of evidence or fracture tape that will indicate any tampering. The seizing officer will initial this tape. A heat seal process may be used on plastic bags.

    c. Evidence labeling must include:

        i. Exact location where found.
        ii. Date and time found.
        iii. The name(s) of person(s) discovering the evidence (name must be printed, and evidence label signed).
        iv. The location where the evidence will be stored (until turned over to the ASP or destroyed per policy).
        v. Date taken and returned from analysis (as needed).
        vi. Where evidence is transferred, a chain of custody form must be obtained including: complete description of evidence, printed and signed name of recipient(s), job title, location and dates transferred.

2. Crime Scene Security

    a. The first DOC employee at any facility or office on the scene not involved in any rescue or first aid efforts will secure the scene, ascertain the identities of all those present and disperse all unauthorized individuals. The identities of all individuals on the scene will be gathered so they can be positively identified for later interviews, if needed.

    b. A supervisor will designate an employee to maintain the security of the crime scene until released by investigators. The employee maintaining the security of the crime scene shall prohibit all other individuals from entering the area. This employee will initiate a crime scene contamination log. Any persons entering the crime scene shall be noted on the log.

    c. Nothing within the crime scene area shall be moved or touched by anyone. If an object needs to be removed because of a threat to security, such as a weapon, that object will be photographed and diagramed with relation to the rest of the crime scene. This will be done prior to its removal if possible.

3. Use of Photographs and Video: Photographic and video evidence is useful and can be invaluable in a subsequent investigation and/or prosecution. Each facility and area office will have a digital camera. Photographs or video recordings shall be taken immediately at the scene and of any victim(s) as soon as possible - in cases of physical assault. Photographs or video recordings of property damage or the scene of a theft are likewise important. Inmates or residents involved in suspected violent crimes shall be photographed prior to and after removal of clothing. Photographs and videos should be handled with the same care as other evidence and should be labeled. Photographs provided to the Internal Affairs Division should be in color. Surveillance video (if available) of the area shall also be retained and turned over to the Internal Affairs Division.

4. Statements: If a reasonable belief exists that a felony has occurred, statements from all involved persons (victims, witnesses, suspects, responders, or anyone with knowledge of the incident) should be forwarded to the Internal Affairs Administrator who will refer the incident, as appropriate, to the ASP or other law enforcement officials, at which time the law enforcement officials will conduct the interview and advise the suspects of their appropriate rights. (Note: In some cases, local law enforcement may be the initial investigator, when a parolee or probationer is involved.)

5. Computerized Voice Stress Analysis (CVSA) and Polygraph Examinations: These investigative tools shall be employed only with prior written or verbal approval of the Secretary, Division Director, or Internal Affairs Administrator.

    a. The investigating officer must present key reasons to the Secretary or Division Director as to why an employee should complete a CVSA or polygraph examination. If the Secretary or Division Director agrees, the employee will then be ordered to take the test.

    b. If an employee consents to take the CVSA/polygraph, he/she shall sign the Computerized Voice Stress Analysis Authorization/Polygraph and Consent form - Attachment A.

    c. If after taking the test, the employee objects to the results of the test, that employee may make a written request to the Secretary to have a second reading of the original computerized voice stress analysis charts made by another independent examiner. A copy of the letter of analysis completed by the second examiner will be given to the employee.

    d. An employee who refuses to take either a CVSA or polygraph examination as directed can be disciplined solely for refusing to do so, as outlined in the applicable policy on Employee Conduct Standards.

6. The Secretary or a Division Director may give a direct order that an employee submit to a CVSA or polygraph examination for violations of policy that would warrant discharge, suspension, or criminal sanctions. The following procedural safeguards will be utilized if this policy is invoked.

    a. Where an employee is accused and the investigator believes it to be important, the accuser will be tested on the CVSA or polygraph first except as directed by the PREA policy. The accuser must tell the truth prior to any order given for an accused to take a CVSA or polygraph test.

    b. Absent an accusation against an employee, where a preliminary investigation reveals that there is credible evidence that the employee was involved or has direct knowledge of the incident, a CVSA or polygraph test may be ordered. Only individuals involved in, or with direct knowledge of the incident, will be subject to examination.

    c. Thorough preliminary investigation of the incident reveals that there are believable allegations that policies or conduct guidelines of the Department or Division, or the law have been violated.

      d. The CVSA or polygraph Examiner must be apprised of the relevant findings/results of the ongoing investigation and use such as a basis for formulation of examination questions.

      e. An employee or offender requested or directed to take a CVSA or polygraph examination must be advised of their right against self-incrimination.

      f. An inmate, community correction center resident, or reentry center resident who refuses to take a CVSA or polygraph examination may receive disciplinary action for such refusal. A parolee or probationer who refuses to take a CVSA or polygraph examination may be sanctioned under the Offender Violation Guide.

      g. The employee or offender shall be advised that the test is being administered as part of an official investigation and shall be informed of the nature of the incident and his/her alleged involvement in or knowledge of it. In addition, the employee or offender shall be made aware that their answers cannot be used against them in a criminal proceeding.

      h. The scope of the examination shall be limited to the incident under investigation, and the questions asked shall relate specifically and directly to the performance of the employee's duties in the course of participating in, witnessing the incident, or having knowledge of the incident, or to the inmate's participation in or witnessing of the incident. A list of all questions asked must be incorporated in the report of the examiner.

      i. The examination must be conducted by a licensed computerized voice stress analysis examiner.

      j. The requesting authority will not sustain a complaint against an employee solely based on CVSA or polygraph test results. There must be at least one additional item of corroborating evidence in the written report completed by the investigating officer for the requesting authority to sustain the complaint. (A witness statement is one form of corroboration).

      k. The DOC has a responsibility to have examinations administered with impartiality. In an accuser-accused relationship, the accuser will be examined first.

E. Unit/Area Office or Departmental Investigations: After the initial reporting of an incident in accordance with AR 005, DOC or Division policy, an investigation shall be conducted into the matter.

    1. All incident reports, statements, disciplinary and medical reports shall be compiled within seven (7) calendar days of the date of the discovery of the incident.

    2. The Warden, Area Manager, or Administrator shall prepare a memorandum in which they summarize this information and make a recommendation for the continuation or termination of the investigation. If recommended to continue, the requesting authority will provide a suggested line of questioning.

    3. This summary memorandum, along with a single packet containing all reports and color photographs, shall be referred by the Warden, Area Manager, or Administrator in the electronic Offender Management System (eOMIS), or forwarded by paper copy under certain instances, with copies of all attached reports, within ten (10) calendar days of the date of the discovery of the incident to the Internal Affairs Administrator; unless requested prior to the ten (10) calendar day timeframe. The referral **must include** the names of all employees and offenders (including offender DOC number) involved in the incidents in the correct area of the report (electronic or paper).

F. Internal Affairs Investigations

    1. The Secretary, a Division Director, or the Internal Affairs Administrator may order an Internal Affairs investigation or review by the Internal Affairs Division of an incident at any time. All Unit, Area, or office investigation material shall be forwarded to the Internal Affairs Administrator. The investigation shall be directed by the Internal Affairs Division, and the Warden, Area Manager, or Administrator will fully cooperate with requests and provide assistance required to complete the investigation.

    2. The Internal Affairs Division will have unlimited access to all locations, offenders, staff and files relevant to any ongoing investigations. The Internal Affairs Division will complete its investigation or review within twenty (20) calendar days of the date the incident was referred and forward its reports and recommendations to the requesting authority. Any extension of the twenty (20) calendar day limit must be requested, in writing, from the Internal Affairs Investigator to the Internal Affairs Administrator for prior approval before the exhaustion of the twenty (20) day deadline. The requesting authority must be advised by the Internal Affair Administrator of any extension of the twenty (20) day deadline.

G. Confidentiality
   1. All notes, reports, tape recordings, and any other material which are part of an investigation are considered confidential. No one shall have access to these records other than the investigative personnel, the Warden, Area Manager, Administrator, the appropriate Deputy or Assistant Director, the Chief Legal Counsel, the Division Director, or the Secretary unless specific permission is granted by the Secretary.
   2. The Internal Affairs Administrator is authorized to designate employees or offenders as confidential sources during an investigation.
      a. Approval from the Secretary or the appropriate Division Director must be obtained in advance of designating an individual as a confidential source.
      b. The Chief Legal Counsel should be consulted when making this designation.
      c. The Internal Affairs Administrator will brief the Secretary, or the appropriate Division Director, on the information, evidence, or statements obtained from confidential sources, regardless of whether the information, evidence, or statements are utilized as part of a final investigative report.
      d. Any information which may lead to the identification of a confidential source shall not be accessed or disclosed, except when required by state or federal law, or a court order.
      e. The Internal Affairs Administrator may be briefed on the use of confidential sources or sources utilized by correctional or parole and probation staff.
      f. The Secretary may brief the Chairman of the Board of Corrections regarding the DOC's use of confidential sources.
H. Freedom of Information Act (FOIA) Compliance
   1. Dissemination of investigative information under the FOIA shall be coordinated by the Office of the Secretary, in consultation with the Chief Legal Counsel. For purposes of litigation preparation, the Internal Affairs Administrator may release investigative information to the Attorney General's Office.
   2. Pursuant to A.C.A. § 25-19-105 an individual's identity is exempt from disclosure under the FOIA if disclosure of the individual's identity could reasonably be expected to endanger the life or physical safety of the individual or a member of the individual's family within the first degree of consanguinity and the individual is a confidential informant or source or the individual's assistance is or was provided under the assurance of confidentiality. First degree of consanguinity includes an individual's biological parents, full siblings, and biological children.
I. Release of Internal Affairs File when Disciplinary Action is Taken against an Employee
   1. Internal Affairs will provide any relevant information to the proper individuals as approved the Secretary or the appropriate Division Director. If investigations indicate that criminal charges may be filed against an employee, release of information should be handled as directed by this policy.
      a. Information should not be released until after criminal charges have been filed and court actions have been concluded.
      b. According to established personnel policy and procedures, the employee should be placed on leave without pay pending outcome of court actions or remain on duty with no disciplinary action taken until after court actions are concluded, with the following exceptions.
         i. When court actions have concluded, the DOC's Grievance Officer, Warden, Area Manager, Administrator, or employee may request specific information if disciplinary proceedings are initiated.
         ii. For instances where administrative investigations produce evidence sufficient to discipline an employee without court actions being taken into consideration, Internal Affairs should release only the information upon which the administrative decision to discipline was based, regardless of pending court actions.

       c. To ensure the confidentiality of complaints and internal investigations, copies of the investigative report should only be maintained in the office of Internal Affairs and the office of the appropriate administrator(s). Information from these investigations will be disseminated to DOC personnel through Internal Affairs on a need-to-know basis and according to law. Any employee who voluntarily gives a statement during an investigation is entitled to a copy of their statement upon request.

J. Board of Corrections: Nothing in this directive shall restrict the access of the Board of Corrections, or its Compliance Division, to any note, recording, or other material which is generated or obtained during an internal investigation. This directive does not restrict the ability of the Board to initiate an investigation within the Department in its role as the governing authority of the Department. See A.C.A. § 25-43-401.

**III.** **ATTACHMENTS:**

Attachment A: Authorization and consent for CVSA or Polygraph Exam
Attachment B: Administrative Warning
Attachment C: Internal Affairs Information Request Form



# Arkansas Department of Corrections
## Office of the Secretary
## Internal Affairs Division

**AUTHORIZATION AND CONSENT FORM FOR A COMPUTERIZED VOICE STRESS ANALYIS OR POLYGRAPH EXAMINATION**

The undersigned Examiner on _____ (Date) and _____ (Time) obtained

Written or Oral authorization from _____ to conduct a CVSA or Polygraph

examination on: _____ (ADC/PID Number_____) OR

_____ (Employee AASIS Number_____)

Purpose of Investigation: _____

_____

**FOR DOC EMPLOYEES:** I understand that I have the right to a Second Reading of the CVSA or Polygraph Examiner's original charts by another licensed independent examiner should I disagree with the results. To exercise my right to a Second Reading, I must make a written request to the Secretary of the Department of Corrections within five (5) business days. I fully understand all expenses associated with a requested Second Reading will be paid by me. I will receive a copy of the Analysis of the Second Reading.

_____ I accept and agree to take the CVSA or Polygraph.

_____ I decline and refuse the CVSA or Polygraph.

_____     _____

Name/Title                                                                   Date & Time

The above signature was witnessed by:

_____     _____

Name/Title                                                                   Date & Time

Authorization Verified by:

_____     _____

Name/Title                                                                   Date & Time



**Arkansas Department of Corrections**
**Office of the Secretary**
**Internal Affairs Division**

### ADMINISTRATIVE WARNING

Date: _____ Time: _____

Employee: _____ Rank: _____

Unit: _____ Position: _____ Employee No: _____

This is an official administrative inquiry regarding _____ an incident, _____ misconduct, or _____ improper performance of official duties, which is under administrative investigation. This inquiry pertains to _____
_____.

The purpose of this interview is to obtain information which will assist in the determination of whether administrative action is warranted. In an administrative investigation you are **required** to truthfully answer all questions directed to you, both orally and when requested in writing.

You are going to be asked a number of specific questions regarding the performance of your official duties. These questions are specifically, directly and narrowly related to the performance of your duty. You are not being questioned for the purpose of instituting criminal proceedings against you.

During the course of questioning, even if you do disclose information which indicates you may be guilty of criminal conduct in this matter, neither your self-incrimination statements, nor the fruit thereof, will be used against you in any criminal proceeding.

If you refuse to answer questions directed to you, you will be given a direct order by a superior and/or Internal Affairs Division Investigator to answer the question directed towards you in this matter. If you refuse to answer the questions, you will be advised such refusal constitutes a violation of the Department's Employee Conduct Standards and Discipline policy and may serve as a basis for more serious disciplinary action, up to, and including **discharge**.

During this investigation you are directed to not discuss or make known any information concerning this matter with anyone other than your direct Chain of Command, your attorney/representative, or members of the Internal Affairs Division.

If you have any questions regarding this warning, or any questions regarding the procedures to be followed, you may direct those questions to the Administrator of Internal Affairs Division, or their designated representative.

I, _____, hereby acknowledge the receipt of the above warning; that I have been given an opportunity to read it, or have it read to me; and I fully understand my rights as outlined above.

        Witnessed by: _____   Date: _____



**Arkansas Department of Corrections**
**Office of the Secretary**
**Internal Affairs Division**

**INTERNAL AFFAIRS INFORMATION REQUEST FORM**

Control #_____   Date Received _____

Name_____

Title_____   Unit _____

Address _____

Purpose of Information Requested _____
_____
_____

Describe requested information. Be as specific as possible: list names, dates, and any other relevant information.

A. _____
_____

B. _____
_____

C. _____
_____

D. _____
_____

E. _____
_____

F. _____
_____

Describe your role in the use of the requested information.
_____
_____
_____
_____
_____
_____

_____
Signature                                                                                   Date

**For Internal Affairs Use Only**

Received By _____    Date _____

Information requested:  Approved _____    Denied _____

If denied, give reason _____
_____
_____


_____    _____
Reviewing Official Signature            Date


_____    _____
Approved By Secretary or designee       Date

Forward Information to:

1. _____    Date _____

2. _____    Date _____

3. _____    Date _____