**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

TRAYESHA BOOTH,                                                                PLAINTIFF,


V.   CASE NO. 4:25-CV-00060-DPM


NITV, LLC; NITV FEDERAL SERVICES, LLC;
CHARLES HUMBLE; AND JOHN DOES 1–2,                          DEFENDANTS.

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN**

**OPPOSITION TO DEFENDANTS' RULE 12(c) MOTION**


Plaintiff, through counsel, submits this Brief:


**INTRODUCTION**

Federal Court is supposed to be notice pleading.  However, Defendants incorrectly seek

judgment on the pleadings by inviting the Court to resolve factual disputes and affirmative

defenses. "After the pleadings are closed—but early enough not to delay trial—a party may

move for judgment on the  pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is

properly granted when, taking all the allegations in the pleadings as true, the moving party is

entitled to judgment as a matter of law." *Fairbanks N. Star Borough v. U.S. Army Corps of

Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008) (quoting *Dunlap v. Credit Prot. Ass'n, L.P.*, 419 F.3d

1011, 1012 n.1 (9th Cir. 2005) (per curiam)). "Analysis under Rule 12(c) is substantially

identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine

whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal

remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (simplified); *see

also Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (noting that "[t]he

principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing" and the motions are "functionally identical"). In other words, as with a Rule 12(b)(6) motion, when evaluating a motion for judgment on the pleadings, "a court must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Chavez*, 683 F.3d at 1108 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)) (cleaned up). On a motion for judgment on the pleadings, the Court may consider information "contained in materials of which the court may take judicial notice" and documents attached to the complaint. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)*; see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003. Here, Plaintiff's Complaint sets out concrete allegations that, taken as true and with all reasonable inferences in her favor, plausibly state multiple claims. A published federal ruling has already denied NITV's attempt to avoid trial on materially similar Computer Voice Stress Analyzer (CVSA) theories in California. The motion should be denied, or at minimum leave to amend should be granted.

## STATEMENT OF FACTS

• Plaintiff began work for the Arkansas Department of Corrections (ADC) in August 2023 and was terminated on February 14, 2024, after ADC said she "failed" a CVSA test during a contraband inquiry.

• She took two CVSA exams; after the second, she was told she was "deceptive," although she truthfully denied wrongdoing; she brought no contraband into the prison.

• NITV designed, marketed, sold, and trained ADC on CVSA—promoting it as capable of detecting deception/"verifying truth" to support discipline decisions in employment and law-enforcement                                                    settings.

• Despite repeated notice (including litigation and public scientific challenges) that CVSA lacks scientific validity and performs no better than chance, NITV continued to market and support the device as accurate and reliable.

• As a direct and proximate result, Plaintiff lost her job and wages, suffered reputational harm, incurred medical bills, and endured mental, emotional, and physical suffering; punitive damages are sought for intentional/reckless conduct.

## ARGUMENT

In *Crowe v. Cnty. of San Diego, No. 99CV0241 R (RBB), 2003 U.S. Dist. LEXIS 29574 (S.D. Cal. Feb. 24, 2003)*, the district court denied NITV's motion for summary judgment on strict-liability and negligence claims involving CVSA. Evidence—including NITV's marketing and officer testimony—supported triable issues that CVSA was promoted and foreseeably used as a lie-detection/truth-verification device even though it could not detect deception. The court held that consumer-expectations and risk-benefit design theories and negligent "overpromotion" were jury questions; credibility attacks could not support judgment as a matter of law.

## III. "ACQUIRED IMMUNITY" DOES NOT APPLY ON THE PLEADINGS

Acquired Immunity does not apply to this case. Acquired immunity protects contractors only to the extent they implement government specifications under supervision; it does not immunize independent product design, marketing, training, and promotional decisions. The doctrine of acquired immunity provides that a contractor who performs in accordance with the terms of its contract with a governmental agency and under the direct supervision of the governmental agency is not liable for damages resulting from that performance. *See Muskogee Bridge Co. v. Stansell*, 311 Ark. 113, 842 S.W.2d 15 (1992); *Southeast Constr. Co., Inc. v. Ellis*, 233 Ark. 72, 342 S.W.2d 485 (1961); *Barker*, 74 Ark. App. 18, 45 S.W.3d 389; *Jordan v. Jerry D.*

*Sweetser, Inc.*, 64 Ark. App. 58, 977 S.W.2d 244 (1998); *Guerin Contractors, Inc. v. Reaves Food Center*, 270 Ark. 710, 606 S.W.2d 143 (Ark. App. 1980). Under this theory, "a contractor for a public agency shares the sovereign immunity of the public body from liability for incidental damages necessarily involved in the performance of the contract." *Id*. at 713, 606 S.W.2d at 144-45 (citing 64 AM. JUR. 2D *Public Works and Contracts* § 135). However, this doctrine does not protect a contractor who performs the contract in a negligent manner resulting in damages to others. *Id*. In *Ellis*, this court held that "where a contractor performs his work in accordance with the plans and specifications and is guilty of neither a negligent nor a willful tort, he is not liable for any damages that might result." 233 Ark. at 77, 342 S.W.2d at 488 (citing 40 C.J.S. *Highways* § 212) (quoting *Ference v. Booth & Flinn Co.*, 370 Pa. 400, 403, 88 A.2d 413, 414 (1952)). The clear purpose of this immunity is to protect the contractor who performs the work as specified from bearing the brunt of liability based on the actions or decisions made solely by the governmental agency, which is immune from suit in tort. There are also practical reasons underlying the doctrine:

If the contractor was required, at its peril, to check and double check all plans given it and required to keep an engineering force for the purpose of interpreting these plans, and was not permitted to follow the orders of the engineering force of its superior, then the cost of public improvement would be so increased as to make them almost prohibitive.

*Id*. (quoting *Wood v. Foster & Creighton Co.*, 191 Tenn. 478, 482-83, 235 S.W.2d 1, 3 (1950)). *Smith v. Rogers Grp., Inc.*, 348 Ark. 241, 250-51, 72 S.W.3d 450, 455-56 (2002). None of these policy implications are present when considering the negligent design of the product at issue.

Plaintiff challenges NITV's own conduct in designing and representing the capabilities of the issue at present, not ADC's specifications. Whether ADC dictated the challenged conduct, the

degree of supervision, and whether any conduct was malicious or outside any protected scope are factual issues that bar Rule 12(c) dismissal.

## IV. PLAUSIBLE CAUSATION IS ALLEGED

Plaintiff alleges two CVSA exams, a "deceptive" result, and termination immediately thereafter—paired with NITV's accuracy claims and training that foreseeably influenced ADC decision-makers. Attempted reliance on policy/EULA language is evidentiary and creates competing inferences reserved for a jury, not grounds for judgment on the pleadings[1]. Indeed, if an accident occurs from two causes, both of which causes are due to the negligence of different persons, but which two caues together are the proximate cause of the accident or injuries, then all of the persons whose acts proximately contribute to the accident are liable for any injuries resulting from such accident, and the negligence of one furnishes no excuse for the negligence of the other." *Ward v. Walker*, 206 Ark. 988, 992, 178 S.W.2d 62, 64 (1944)

## V. PRODUCT-LIABILITY COUNTS ARE WELL PLED

Defendant argues, "The use of a CVSA device during the course of an ADC investigation is not an unreasonably dangerous condition." This is a straw man.  Plaintiff alleges that the use of a CVSA device falsely marketed as reliable in the detection of deception during the course of an ADC investigation is an unreasonably dangerous condition.. In order to recover under the strict product liability theory, the plaintiff must prove 1) that he has sustained damages; 2) that the defendant was engaged in the business of manufacturing or assembling or selling or leasing or distributing the product; 3) that the product was supplied by the defendant in a defective condition which rendered it unreasonably dangerous; and 4) that the defective condition was a proximate cause of plaintiff's damages. The Product Liability Act of 1979 enacted by the Arkansas General

---

[1] Plain tiff objects to consideration of matters outside the pleadings.

Assembly, while creating no new cause of action, clarified the strict product liability theory by defining terms, establishing a limitations period, and enumerating defenses and indemnification remedies. Ark. Stat. Ann. §§ 34-2801 -- 2807 (Supp. 1983).

To recover for breach of an implied warranty of fitness for a particular purpose, the plaintiff must prove 1) that he has sustained damages; 2) that at the time of contracting, the defendant had reason to know the particular purpose for which the product was required; 3) that defendant knew the buyer was relying on defendant's skill or judgment to select or furnish the product; 4) that the product was not fit for the purpose for which it was required; 5) that this unfitness was a proximate cause of plaintiff's damages; and 6) that plaintiff was a person whom defendant would reasonably have expected to use the product.

In recovery for breach of implied warranty of merchantability, the plaintiff must prove 1) that he has sustained damages; 2) that the product sold to him was not merchantable, *i.e.*, fit for the ordinary purpose for which such goods are used; 3) that this unmerchantable condition was a proximate cause of his damages; and 4) that he was a person whom the defendant might reasonably expect to use or be affected by the product. *E. I. Du Pont de Nemours & Co. v. Dillaha*, 280 Ark. 477, 479-80, 659 S.W.2d 756, 757-58 (1983) Plaintiff alleges that CVSA is defective and unreasonably dangerous in its ordinary, foreseeable use—truth-verification in investigations—because it mislabels truthful subjects as "deceptive" while marketed as accurate. She pleads personal injury (emotional/physical suffering and medical bills) and economic/reputational damages. Plaintiff alleges strict liability for an alleged defect in the tire, breach of the implied warranty of merchantability, and negligent failure to warn. There are factual issues that remain to be decided on each of the three theories she has pled against NITC: strict liability for an alleged defect in the tire, breach of the implied warranty of merchantability, and negligent failure to

warn. To recover under a strict liability theory, a plaintiff must prove, *inter alia*, that the defendant supplied the    product in a defective condition that rendered it unreasonably dangerous and that the defective condition was the proximate cause of the plaintiff's harm. *See* Ark. Code Ann. § 4-86-102(a) (Repl. 1996); *E.I. Du Pont de Nemours & Co. v. Dillaha*, 280 Ark. 477, 659 S.W.2d 756 (1983). A "defective condition" is a condition that renders a product unsafe for reasonably foreseeable use and consumption. Ark. Code Ann. § 16-116-102(4) (1987). A product is "unreasonably dangerous" if it is dangerous to an extent beyond that which would be contemplated by the  ordinary and reasonable user, assuming the ordinary knowledge of the community or similar users as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge, training, or experience possessed by the user. *See* Ark. Code Ann. § 16-116-102(7) (1987); *Lee v. Martin*, 74 Ark. App. 193, 198, 45 S.W.3d 860, 863-64 (2001). Whether CVSA fails consumer-expectations or the risk-benefit test is a merits issue. *Crowe* denied summary judgment on nearly identical theories. In *Crowe*, *infra*, police investigating the Stephanie Crowe homicide used NITV's Computer Voice Stress Analyzer ("CVSA") during custodial interrogations of teens, including Michael Crowe. An interrogating detective told the teens the CVSA had a "97 percent" reliability rate and was "foolproof," and he treated CVSA charts as indicating deception. The court found this record would allow a jury to conclude CVSA was promoted and intended as a device capable of identifying untruthfulness, that it was used that way here, and that such use was reasonably foreseeable.

On summary judgment, NITV argued there was no triable defect or negligence. The court rejected that attempt, explaining that plaintiffs' theory was that CVSA is defective precisely because it cannot detect lies, while being made, sold, and used as a truth-verification device. On that record, a reasonable factfinder could conclude a device intended for truth-verification but

incapable of verifying truthfulness is "reasonably certain to be dangerous," precluding judgment as a matter of law on strict-liability design-defect grounds. The court likewise held that negligence theories presented triable issues and that NITV's attack on witness credibility could not sustain summary judgment—credibility is for the jury. The court also discussed negligent "overpromotion," noting California authority recognizing that aggressive promotion can negate warnings and sustain liability; NITV failed to show that such a claim should be dismissed on the record presented. So, the court denied NITV's motion for summary judgment in full. This Court should deny the motion at bar as well.

## VI. DEFAMATION AND FALSE-LIGHT SURVIVE

CVSA output communicates a factual assertion about veracity that was published within ADC. NITV's integrated scheme—software output, training/licensure, and consultation—supports attribution to NITV. A viable action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. *Northport Health Sews., Inc. v. Owens*, 356 Ark. 630, 641, 158 S.W.3d 164, 171 (2004). A plaintiff in a defamation case must prove reputational injury in order to recover damages. *Ellis v. Price*, 337 Ark. 542, 549, 990 S.W.2d 543, 547 (1999). A plaintiff must establish actual damage to his reputation, but the showing of harm is slight. *Ellis*, 337 Ark. at 549, 990 S.W.2d at 547. A plaintiff must prove that defamatory statements have been communicated to others and that the statements have detrimentally affected those relations. *Id*. at 549-50, 990 S.W.2d at 547. The law does not require proof of actual out-of-pocket expenses. *Roeben v. BG Excelsior Ltd. P'ship*, 2009 Ark. App. 646, ¶ 7, 344 S.W.3d 93, 98 (Ct. App.). A false-light/invasion-of-privacy claim has two essential elements: the complaining party must show (1) that the false light in which he was placed by the publicity would be highly offensive to a reasonable person, and (2) that the defendant had

knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Dodrill v. Arkansas Democrat Co.*, 265 Ark. 628, 590 S.W.2d 840 (1979). Here, the CVSA produced data that falsely indicated deception. This data was defamatory and caused Plaintiff to lose her job. The motion should be denied.

Qualified-privilege and "opinion" are affirmative defenses that turn on good faith, scope, falsity, and malice—fact-intensive issues that cannot defeat the pleadings. The Affirmative defenses are not so apparent from the face of the Complaint such that this Court can enter judgment on the pleadings on a affirmative defense. "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014); *see also Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense.[2]") (quoting *Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)). "If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." *ASARCO*, 765 F.3d at 1004 (9th Cir. 2014). Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the Court treats judgment on the pleadings on the basis of an affirmative defense as it would a treat a dismissal. *See Dworkin*, 867 F.2d at 1192. If the Court desires additional particulars, Plaintiff requests leave to amend. Affirmative defenses can be stricken "when they are insufficient on the face of the pleadings." *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (citing *Heller*, 883 F.2d at 1294) ("Ordinarily, defenses will not be struck if they are sufficient as a matter of law

---

[2] Plaintiff objects to consideration of the ADC's Secretarial Directive as outside the pleadings.

or if they present questions of law or fact."). "A defense is an affirmative defense if it is specifically enumerated in Fed. R. Civ. P. 8(c), if the defendant bears the burden of proof, or if the defense does not require controverting the plaintiff's proof." *Perez v. PBI Bank, Inc.*, No. 1:14-CV-1429, 2015 U.S. Dist. LEXIS 13590, 2015 WL 500874, at *5 (S.D. Ind. Feb. 4, 2015) (citing *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012)). "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure" and "must set forth a 'short and plain statement' of the defense." *Heller*, 883 F.2d at 1294 (quoting Fed. R. Civ. P. 8(a)).**2** The *Heller* court found several defenses meritless because they were "nothing but bare bones conclusory allegations," noting that the defendant "omitted any short and plain statement of facts and failed totally to allege the necessary elements of the alleged claims." *Id.* at 1295.  Here, dismissing a case on a Rule 12(c) motion on affirmative defenses is procedurally inappropriate and should be summarily rejected.

## VII. NEGLIGENCE IS PLAUSIBLE

Whether under a product liability negligence claim or a common law claim, NITV owed duties not to design, market, train on, and supply a device that would foreseeably misbrand truthful employees as deceptive in high-stakes employment investigations.

### A. Legal standard (Restatement §§ 291–295)

Under §§ 291–295, conduct is negligent when the actor's chosen course of action creates an unreasonable risk of harm considering the magnitude and likelihood of harm versus the utility of the conduct and the burden of precautions. In product cases, that framework readily applies to (i) negligent design and warnings, and (ii) negligent overpromotion—i.e., marketing, training, and messaging that foreseeably induce dangerous use despite known limitations. Courts applying this framework routinely allow claims to proceed where a device is promoted for a safety-critical

purpose it cannot reliably perform, and where promotional/training practices foreseeably lead decision-makers to rely on inaccurate outputs. See, e.g., *Crowe v. County of San Diego* (denying NITV's summary-judgment bid on negligent design and negligent overpromotion theories tied to CVSA's claimed truth-verification capability).

**B. Plaintiff plausibly pleads unreasonable risk (Restatement § 291)**

The Complaint alleges CVSA/VSA devices are inherently unreliable at detecting deception—no more reliable than random chance—yet Defendants promoted them as tools to determine whether an employee is lying for disciplinary purposes and sold and trained end-users to deploy them that way. Those allegations squarely plead the Restatement risk–utility imbalance: the utility of marketing a truth-verification device is minimal (if the device cannot do what is claimed), while the risk—false "deception" findings that trigger serious employment consequences—is grave and foreseeable. *Crowe* recognized the same point as a triable negligence issue: a factfinder could find CVSA was made and sold as a truth-verification device yet cannot detect untruthfulness, making it reasonably certain to be dangerous.

**C. The pleadings tie Defendants' conduct to the risk (design, training/warnings, and overpromotion)**

Plaintiff alleges Defendants created, designed, advertised, marketed, and trained on CVSA/VSA knowing its limitations, and continue those practices despite notice, including prior litigation. Those allegations plausibly encompass (1) negligent design/insufficient warnings (promoting an accuracy claim that is not achievable), and (2) negligent overpromotion— messaging and training that foreseeably induce ADC personnel to rely on CVSA output as proof

of deception in disciplinary decisions. *Crowe* specifically identified negligent overpromotion in the CVSA context as a viable theory resisting dispositive motion.

### D. Foreseeability and causation are plausibly alleged (Restatement §§ 292–294)

The Complaint alleges: (i) Plaintiff was twice tested; (ii) after the second test she was told she was "deceptive"; and (iii) she was terminated on February 14, 2024. It further alleges Defendants sold the device used on Plaintiff to ADC, marketed the device nationwide as capable of detecting lies for discipline, and trained end-users. Those facts permit a reasonable inference that NITV's design, warnings, marketing, and training were a substantial factor in ADC's foreseeable reliance on CVSA output—exactly the type of factual dispute *Crowe* held could not be resolved against plaintiffs as a matter of law. Defendants' contrary causation argument—that ADC policies/EULAs required corroboration and therefore break the chain—poses a fact issue. Plaintiff plausibly alleges the use and reliance were induced by Defendants' overpromotion and accuracy claims; the presence of policy caveats does not defeat causation at the pleadings stage, especially where Plaintiff alleges the device falsely labeled her "deceptive," followed immediately by termination. The Restatement's balancing asks whether Defendants acted unreasonably given foreseeable harms—not whether a third party's policies perfectly cured the risk. That is for discovery.

### E. Damages are adequately pled (Restatement § 293 factors)

Plaintiff alleges lost job and wages, reputational harm, medical bills, and mental/emotional/physical suffering—injuries of the kind the Restatement recognizes when an unreasonable risk materializes. Taking the factual allegations as true and drawing all reasonable inferences for Plaintiff, the Complaint plausibly alleges negligence under Restatement (Second)

of Torts §§ 291 et seq. on both design/warnings and negligent overpromotion theories. At a minimum, *Crowe* confirms these are record-dependent issues inappropriate for judgment on the pleadings. Breach and proximate cause are plausibly alleged. *Crowe* confirms that intended/foreseeable use and dangerousness are jury issues when a purported truth-verification device cannot detect deception. The Rule 12(c) motion should be denied.

## VIII. ADTPA CLAIM STATES A CLAIM

Plaintiff alleges deceptive accuracy marketing that caused injury. The Motion should be denied for the following reasons.

**A.   The ADTPA Claim Alleges a "Consumer-Oriented" Act; *Baptist Health v. Murphy* Confirms the Statute Reaches Conduct That Harms Consumers Even Without a Direct Retail Sale**

NITV says the ADTPA is inapplicable because Plaintiff is not a retail purchaser of the CVSA and NITV sold the device to a government agency (ADC). That framing is too narrow. The Arkansas Supreme Court has already treated the ADTPA as reaching **market conduct that harms consumers** even where the challenged practice is not a conventional consumer checkout transaction. In *Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (2006), the court affirmed an ADTPA violation based on an "unconscionable" policy by a hospital that leveraged its market power ("upper hand because of exclusive-provider contracts") to disrupt the relationship between patients and their physicians. The patients were the ultimate consumers harmed by the policy, even though the immediate contractual conduct was between institutional actors (a hospital's credentialing policy vis-à-vis physicians). *Baptist* thus recognizes that the ADTPA reaches business practices that, in the stream of commerce, predictably injure consumers, whether or not the plaintiff personally swiped a card for the product or service.

So too here. Plaintiff alleges NITV markets, trains on, and promotes the CVSA to Arkansas law-enforcement and correctional agencies as a truth-verification device, knowing (or recklessly disregarding) that voice-stress devices are no more reliable than chance. Those deceptive accuracy claims are consumer-oriented in the *Baptist* sense because they target the public-facing delivery of a critical government service—truth-finding in public safety and employment discipline—where ordinary Arkansans (employees, suspects, witnesses, arrestees, inmates) are the end-users/consumers of the consequences. Just as *Baptist* condemned a hospital's market conduct that left "patients … at Baptist's mercy," NITV's overpromotion leaves those subject to CVSA-based decisions at NITV's mercy: a device touted as detecting deception that, according to the pleadings and cited studies, cannot do so. That is classic "business, commerce, or trade" conduct with consumer impact.

NITV's reliance on *IlluminationStation*/*Skalla* and *Oak Creek* is misplaced:

- Text & standing. The statute grants a private right of action to "any person" who suffers actual damage "as a result of" an ADTPA violation. Ark. Code Ann. § 4-88-113(f). It is not limited to buyers at the point of sale. Plaintiff is a "person" who alleges concrete injury caused by NITV's deceptive trade practices.

- Consumer-orientation is satisfied by foreseeable public impact. *Oak Creek* involved a failure to allege a practice directed toward or impacting the consuming public; here, by contrast, the Complaint alleges statewide marketing, training, and licensing of a public-safety product specifically to induce reliance in disciplinary and investigative decisions that directly impact individuals.

- Apprentice Info. Sys. v. DataScout acknowledges the ADTPA protects consumers of goods and services; that protection is triggered when business practices operate in the marketplace to mislead and harm those consumers. That is precisely the theory pled: deceptive accuracy claims about CVSA (goods/services) that predictably harm the people subjected to it.

Under *Baptist*, a practice is "consumer-oriented" when it wields market power or misleading claims in a way that impairs consumer interests—here, by corrupting the truth-finding process that determines people's jobs, reputations, and liberty interests. Plaintiff's ADTPA claim comfortably states a claim and should proceed.

## B. NO SAFE HARBOR

Any "safe-harbor" applies only to conduct specifically permitted by a regulator; deceptive accuracy claims are not specifically permitted.  The ADTPA Safe Harbor Does Not Apply: ADC's use of CVSA may be authorized, but NITV's manufacture/marketing of the device—and its accuracy claims—are not "specifically permitted." Defendants misread the ADTPA's safe harbor. The statute shields only those "actions or transactions specifically permitted under laws administered by" a regulator. Ark. Code Ann. § 4-88-101(3) (emphasis added). The "action or transaction" Plaintiff challenges is NITV's role as a supplier—its design, manufacture, sale, and marketing of CVSA with deceptive accuracy representations—not ADC's internal decision to use a CVSA in investigations. Nothing in the Private Investigators/Security/Voice-Stress rules or the ADC/Board of Corrections policies specifically permits a manufacturer to advertise CVSA as a lie- or truth-verification device, to claim a particular accuracy rate, or to place such claims into commerce to induce purchases. Licensing of examiners and an agency's permission to use CVSA are different in kind from approving a manufacturer's representations in the marketplace. Arkansas courts construe this safe harbor narrowly: it applies only when the precise practice at issue has

been "specifically permitted or authorized" by a regulator—not where a regulator merely exists, licenses a profession generally, or allows an agency to use a tool. See, e.g., *Air Evac EMS, Inc. v. USAble Mut. Ins. Co.*, 2017 Ark. 368, at 6, 533 S.W.3d 572, 575–76 (safe harbor is triggered when "the actions or transactions at issue have been specifically permitted or authorized"). Defendants identify no rule, order, or guidance in which the Arkansas State Police (or any regulator) approved NITV's marketing claims, certified the device's efficacy, or authorized the very representations Plaintiff says are deceptive. General regulatory frameworks and agency-use policies are not a blank check for private vendors' advertising. Even if ADC's use of CVSA is referenced in administrative rules, that does not convert NITV's commercial conduct into a "specifically permitted" transaction. The ADTPA targets deceptive acts "in connection with the sale or advertisement of any goods or services," and Defendants' conduct fits that core. Whether a regulator ever "specifically permitted" NITV's representations is, at minimum, a fact question inappropriate for dismissal. On this record, the safe-harbor defense fails as a matter of law and fact.  Whether Plaintiff qualifies and causation are fact questions that cannot be resolved under Rule 12(c).

## IX. DISMISSAL OF NITV ENTITIES OR HUMBLE IS PREMATURE

The Complaint plausibly alleges roles and responsibility, including common ownership/control and direct participation. Those details lie within Defendants' exclusive knowledge and should be tested in discovery—not foreclosed at the pleadings stage. NITV, LLC and Charles Humble Are Properly Named; Plaintiff Plausibly Alleges Their Direct and Vicarious Liability. Defendants' "no facts about NITV, LLC or Humble" argument ignores both the Complaint's theory and the record about how the CVSA came to market and is promoted/used. Rule 8 requires plausibility—not trial proof. At the pleadings stage, allegations "on information and belief" are permitted where key facts lie within Defendants' exclusive control, and courts draw reasonable inferences for the plaintiff.

Humble's direct role in devising and promoting the CVSA makes his personal liability plausible. Plaintiff alleges Humble "is the inventor of the CVSA" and a director of the NITV entities. That is not a bare legal conclusion—it's a concrete factual predicate for direct liability. In *United States v. Pope*, No. 1:18-CR-00017-GNS-HBB-1, 2019 U.S. Dist. LEXIS 175507, at *10 (W.D. Ky. Aug. 19, 2019), expert Dr. Frank Horvath explained that the CVSA was devised by Humble after his experience using and training others on Dektor's Psychological Stress Evaluator (PSE), and that the CVSA is functionally equivalent to the PSE—Humble essentially converted the analog PSE concept into a computer-based instrument. From those facts, it is more than plausible to infer Humble personally participated in, supervised, and/or approved the design decisions, accuracy claims, training curricula, and marketing that are central to Plaintiff's product-liability, negligence, defamation/false-light, and ADTPA theories. Scientific unreliability long known in the voice-stress family supports a reasonable inference of Humble's knowledge and misrepresentation.  Horvath—whose academic career focused on credibility assessment and psychophysiology—testified that voice-stress devices like the PSE and CVSA have been shown in multiple studies (e.g., Hollien/Harnsberger 2000 & 2008; Damphousse 2007) to be no more reliable than chance, and that the Department of Defense cautioned against using CVSA-type devices. He was unaware of any peer-reviewed studies validating CVSA accuracy. That scientific backdrop supports a plausible inference that Humble, as inventor/developer and longtime trainer/promoter, knew or should have known the device could not do what NITV markets it to do, yet continued to authorize accuracy claims and training that foreseeably influenced disciplinary decisions like Plaintiff's termination. This is classic direct-participation and negligent/intentional misrepresentation territory—not mere status liability. NITV, LLC is plausibly liable alongside NITV Federal Services.

The Complaint alleges the NITV entities together designed, marketed, licensed, and trained users on CVSA. Which entity papered which sale, held the IP, issued the training/EULA, or authored specific marketing lines are facts uniquely in Defendants' possession. Pleading both entities "on information and belief" is proper where (as here) the product's design, warnings, accuracy claims, examiner training, and licensing schema are interrelated and jointly branded as "NITV." Discovery will sort corporate allocation; Rule 12(c) is not the place to do it. Causation and publication theories naturally encompass Humble/NITV actions. Plaintiff alleges she was twice tested, labeled "deceptive," and then terminated; NITV's accuracy marketing, training, and licensing foreseeably caused ADC to rely on the output. Those allegations plausibly attribute publication (defamation/false light) and causation to the NITV scheme Humble devised and the entities implemented. The Complaint clears the plausibility bar as to NITV, LLC and Humble.

Further, every person, or every partner, officer, or director of another person who directly or indirectly controls another person or who is in violation of or liable under this chapter or every person who directly or indirectly facilitates, assists, acts as intermediary for, or in any way aids another person who is in violation of or liable under this chapter in the operation or continuance of the act or practice for which the violations or liability exists shall be jointly and severally liable for any penalties assessed and any monetary judgments awarded in any proceeding for civil enforcement of this chapter, if the persons to be held jointly and severally liable knew or reasonably should have known of the existence of the facts by reason of which the violation or liability exists. Ark. Code Ann. § 4-88-113. Thus, this is a further basis for denying the Motion[3].

---

[3] If the Court wants additional particulars (e.g., identifying specific training modules, EULA provisions, or marketing statements attributable to each Defendant), the appropriate remedy, if any, is leave to amend, not dismissal.

## X. ALTERNATIVE RELIEF

If the Court identifies any pleading deficiency, Plaintiff requests leave to amend under Rule 15 to add the additional facts, in addition to the fact above.    Rule 15 of the FRCP provides that leave to amend the pleadings should be liberally granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). This Court should exercise its discretion and allow Plaintiff to amend.

Respectfully,

**SUTTER & GILLHAM, PLLC**

By: */s/ Luther Oneal Sutter*
Luther Oneal Sutter (Ark. Bar No. 95031)
Counsel for Petitioner
1501 N Pierce Ste 105 Little Rock, Arkansas 72205
Tel: (501) 315-1910 | Fax: (501) 315-1916
luther.sutterlaw@gmail.com